UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ELIZABETH LUESSENHOP,

                         Plaintiff,

    - v -                                         Civ. No. 1:04-CV-263
                                                                       (RFT)

CLINTON COUNTY, NEW YORK,
WILLIAM BINGEL, in his Individual Capacity
and in his Official Capacity as Clinton
County Administrator, and JANET DUPREY,
in her Individual Capacity and in her Official
Capacity as Clinton County Treasurer,

                         Defendants.
_____

**APPEARANCES:**                                        **OF COUNSEL:**

OFFICE OF MARK A. SCHNEIDER              MARK A. SCHNEIDER, ESQ.
Attorney for Plaintiff
57 Court Street
Plattsburgh, NY 12901

MAYNARD, O'CONNOR, SMITH &                ROBERT A. RAUSCH, ESQ.
CATALINOTTO
Attorney for Defendants
6 Tower Place
Albany, NY 12203

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## MEMORANDUM DECISION and ORDER[1]

      Plaintiff, Elizabeth Luessenhop, brings a cause of action against the Defendants, pursuant to 42 U.S.C. § 1983, alleging violations of Plaintiff's Fourteenth Amendment Due Process Rights in a tax foreclosure proceeding. Dkt. 1, Compl. at ¶ 51. Defendants seek a Motion for Summary

---

[1] Pursuant to 28 U.S.C. § 636(c), FED. R. CIV. P. 73, and N.D.N.Y.L.R. 72.2(b), the parties have consented to disposition of this matter by the undersigned. Dkt. No. 22.

Judgment pursuant to FED. R. CIV. P. 56(b).  Dkt. No. 25.  Plaintiff cross-moves for Partial Summary Judgment on the issues of liability, injunctive relief and declaratory relief.  Dkt. No. 29.

## I. FACTS

Luessenhop owned two parcels of land located in Clinton County, New York, and was derelict in paying the property taxes on those parcels.[2]  Compl. at ¶ 1.  These properties had been the subject of four prior foreclosure proceedings due to back taxes owed on the parcels.[3]  Dkt. 25, Defs.' Stat. of Undisputed Facts at ¶ 4.  In January 2002, notices were sent to those owing taxes including Luessenhop, whose notice was delivered to her permanent address.[4]  *Id.* at ¶ 5.  Then in October 2002, notices and petitions of foreclosure were mailed to those who had still not paid the taxes with Plaintiff's notice again being sent to her permanent address.  *Id.* at ¶ 6.  Luessenhop had provided Clinton County and the Town of Champlain, where the properties were located, a permanent address located in Washington, D.C., where four previous tax bills and other foreclosure notices had been sent without any problem.  *Id.* at ¶ 8; Compl. at ¶¶ 15 & 17.  Luessenhop occasionally spends time in London, England, and claims that both the County and Town had her address and phone number in London along with her permanent address.[5]  Compl. at ¶ 17.

---

[2] The Plaintiff is the owner of two adjacent parcels of land, one residential and one vacant, which we shall refer to as her "property."

[3] Plaintiff had received four prior notices of foreclosure due, to owed property taxes in 1995, 1997, 2000 and, 2001, at her permanent address in Washington, D.C, which were partially paid in order to avert tax foreclosures.  Defs.' Stat. of Undisputed Facts at ¶¶ 4 & 8; *see also infra* Part II.B.2.  Plaintiff recalled receiving those bills at the Washington, D.C. address in the previous foreclosures.  Dkt. 25, Examination Before Trial of Pl. at pp. 15-16.

[4] Plaintiff's notice was not returned to the U.S. Post Office as "undeliverable."  Defs.' Stat. of Undisputed Facts at ¶ 5.

[5] The County claims they had not been notified of Plaintiff's address in London, England nor any alternate address aside from her permanent address on record.  Defs.' Stat. of Undisputed Facts at ¶ 9.  In the Examination Before Trial of the Plaintiff, dated Oct. 13, 2004, Plaintiff states that she did not believe that any other address was given to the county besides her permanent address and that it was her expectation that she would receive any mail at the permanent

Plaintiff was sent two notices by certified mail to her permanent address that went unclaimed and were returned to the Clinton County Treasurers' Office, where the Plaintiff's address was confirmed to be correct according to the tax rolls. Defs.' Stat. of Undisputed Facts at ¶¶ 10 & 11. Plaintiff denies receiving any notices at her permanent address.[6] Compl. at ¶ 2. In addition to the certified mail, the County also posted the notice at the Clinton County Courthouse and published the notice in two newspapers. Dkt. No. 25, Janet L. Duprey Aff. at ¶¶ 3 & 5. Luessenhop states that in April 2003, she received a notice from the Champlain Tax Collector and subsequently sent a check for the amount owed.[7] Compl. at ¶¶ 21 & 22.

The October 2002 Notice had set a redemption date of January 17, 2003, and because Luessenhop had not paid her taxes as of that time, a default judgment was entered on March 20, 2003, and title to the property was transferred to Clinton County on April 1, 2003. Defs.' Stat. of Undisputed Facts at ¶¶ 6 & 15. In May 2003, a "for sale" sign was placed on the properties which caused Luessenhop to call the Clinton County Treasurer. Compl. at ¶ 25. Plaintiff then found out that title had been transferred and in order for her to regain title she would have to purchase it back at a public tax auction. *Id.* at ¶ 28. On August 1, 2003, Plaintiff's motion to vacate the default

---

address. Examination Before Trial of Pl. at pp. 15 & 22-23. However, the Complaint states that Plaintiff had given the County her other address and phone number. Compl. at ¶ 3.

[6] Plaintiff asserts someone always picked up her mail and retrieved certified mail when she was away and that no one refused nor rejected a certified letter mailed to her permanent address. Compl. at ¶¶ 2 & 19. Also, Plaintiff asserts that no one from the County Defendant's office followed up with phone calls to either her Washington, D.C. residence or her London, England residence. *Id.* at ¶ 3.

[7] The Champlain Tax Collector denies ever receiving the check. Compl. at ¶ 23. Also, there was no proof presented that the check had been cashed. Compl. at ¶¶ 21-24.

judgment was denied and subsequent appeals were denied.[8] Defs.' Stat. of Undisputed Facts at ¶ 18 & 19. As of today's date, Luessenhop's property is still owned by Clinton County and the Defendants have agreed not to auction off the properties until the conclusion of this action. Compl. at ¶¶ 48 & 49. For the reasons that follow, Defendants' Motion for Summary Judgment is **granted** and Plaintiff's Motion for Partial Summary Judgment is **denied**.

## II. DISCUSSION

### A. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the nonmoving party must "set forth specific

---

[8] The motion to vacate the judgment was denied by the Clinton County Supreme Court. Defs.' Stat. of Undisputed Facts at ¶ 18. Plaintiff appealed the denial of that motion to the New York State Supreme Court, Appellate Division, Third Department, which denied the appeal on August 8, 2003, and the New York Court of Appeals denied leave to appeal on October 30, 2003. *Luessenhop v. Clinton County*, 801 N.E.2d 418 (N.Y. 2003); Defs.' Stat. of Undisputed Facts at ¶ 19.

facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts submitted by the moving party. FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) and *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Moreover, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

### B. Due Process Claims

In order to state a claim for violation of due process, a plaintiff must allege that there was deprivation of life, liberty or property without proper notice and an opportunity to be heard. *See*

*generally Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 795 (1983) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)).  Fundamentally, due process requires notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" and an "opportunity for [a] hearing appropriate to the nature of the case," both which must be granted in a meaningful time and manner.  *Mullane*, 339 U.S. at 313 & 314; *see also Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  "Due process is flexible" and procedural protections are situational.  *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Morrisey v. Brewer*, 408 U.S. 471, 481 (1972)).  Therefore, in order to determine the process due before official action will be taken, courts looks at several factors including:

> [1)] the private interest that will be affected by the official action; [2)] the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [3)] the Government's interest including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

Here, Plaintiff alleges deprivation of property wherein the Clinton County's tax foreclosure proceedings and subsequent auction violated her due process rights due to a failure to provide proper notice.

**1. Notice**

The due process notice requirement is satisfied as long as the entity has acted reasonably in choosing the "means likely to inform persons affected, [and] not whether each property owner actually received notice[,]" thereby "discharg[ing] its burden."  *Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir. 1988) (quoted in *Akey v. Clinton County*, 375 F.3d 231, 235 (2d Cir. 2004)).

Plaintiff contends that she was deprived of her property without due process since she did not receive actual notice of the foreclosure. Plaintiff also claims that Article 11 of New York's Real Property Tax Law is unconstitutional because it allows a county to retain profits from a tax auction when actual notice of the foreclosure proceedings was not provided to the owner of the property. However, and much to the contrary, the correct inquiry for this Court is whether the notice was a reasonable means likely for the owners to be informed of the proceedings. *Weigner*, 852 F.2d at 650 (quoting *Mullane*, 339 U.S. at 315, for the proposition that "[t]he reasonableness and hence the constitutionality of any chosen method may be defended on the ground that it is in itself *reasonably certain* to inform those affected[.]" (emphasis added)). Clinton County acted reasonably in selecting a method likely to inform the owner by sending notice by certified mail, posting the notice at the Clinton County Courthouse, and publishing the notice in two newspapers. Duprey Aff. at ¶¶ 3 & 5.

"The Supreme Court has frequently said and just restated that, under most circumstances, notice sent by ordinary mail is deemed reasonably calculated to inform interested parties that their property rights are in jeopardy." *Weigner*, 852 F.2d at 650 (citing *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 484-90 (1988); *Mennonite*, 462 U.S. at 800; *Mullane*, 339 U.S. at 319). Furthermore, mailing is "an efficient and inexpensive means of communication that generally may be relied upon to deliver notice where it is sent" and even though sometimes mail can be unreliable, "actual receipt of notice that is properly mailed" has not been required. *Weigner*, 852 F.2d at 650 (internal quotation marks and citations omitted); *see also Mullane*, 339 U.S. at 319; *Akey*, 375 F.3d at 235.

In this case, New York Real Property Tax Law (N.Y. REAL PROP. TAX LAW) § 1125(1)(a)

requires that on or before the first publication of the notice, the notice must be mailed to the owner by certified mail and to anyone else with an interest by first class mail.[9] On October 4, 2002, Clinton County sent by certified mail the notice and petition for the foreclosure of the property owned by Plaintiff. Duprey Aff. at ¶¶ 2 & 6. In fact, the U.S. Post Office attempted to deliver the certified mail twice to the permanent address provided by Plaintiff before the notice was returned as "unclaimed." *Id.* at ¶ 6. N.Y. REAL PROP. TAX LAW § 1125(1)(a) also states that notices will be sent to those "whose name and address are reasonably ascertainable from the public record." Since the notice requirement of due process directs that notice be sent to Plaintiff's address that is reasonably ascertainable from the public record, the requirement was fulfilled when the notice was sent to the permanent address listed for Luessenhop on the tax rolls.[10] *See generally Schroeder v. City of New York*, 371 U.S. 208, 212-13 (1962).

Moreover, when mailings are "supplemented by other forms of notice such as posting or publication, the risk of non-receipt is constitutionally acceptable." *Weigner*, 852 F.2d. at 651. Here,

---

[9] N.Y. REAL PROP. TAX LAW §1125(1)(a) states:
The enforcing officer shall on or before the date of the first publication of the notice above set forth cause

a notice to be mailed to (a) each owner by certified mail and any other person by ordinary first class mail whose right, title, or interest was a matter of public record as of the date the list of delinquent taxes was filed, which right, title or interest will be affected by the termination of the redemption period, and whose name and address are reasonably ascertainable from the public record, including the records in the offices of the surrogate of the county.

[10] Plaintiff argues that there is a significant difference between "ordinary first-class mail" and "certified mail." Dkt. 29, Pl.'s Mem. of Law at pp. 9-11. Plaintiff also argues that all the case law regarding "ordinary first-class mail" should not be followed because it does not pertain to "certified mail." *Id*. This argument lacks merit. In 2000, New York's Real Property Tax Law changed from requiring notice to be sent by ordinary first-class mail to owners to requiring notice be sent by certified mail. Case law dealing with ordinary first-class mail should also apply to certified mail and case law precedent should not be disregarded due to the type of mail sent. *Akey*, 375 F.3d at 235 (citing *Weigner* for the proposition that the means selected should be likely to inform the person affected, and at a minimum, "mail notice satisfies the requirement of due process"). Logically, ordinary mail has a greater chance of being lost whereas certified mail has a greater likelihood of delivery since it is brought to the door of the owner. This ensures greater reliability that the notice will reach the owner. Plaintiff's reliance on out-of-state case law to provide the difference between ordinary and certified mail is misplaced.

Clinton County, in addition to sending the notice of foreclosure by certified mail, printed the notice of foreclosure in two Clinton County newspapers once a week over three different weeks[11] and notice was posted at the Clinton County Courthouse. Duprey Aff. at ¶ 5.

Additionally, New York law establishes that when there is proof to show that standard office procedures were properly followed and that "these procedures establish that the required notice has been properly addressed and mailed, a presumption arises that notice was received. The mere denial of receipt does not rebut that presumption."[12] *Meckel v. Cont'l Res. Co.*, 758 F.2d 811, 817 (2d Cir. 1985); *see also Akey*, 375 F.3d at 235. In order to rebut the presumption, in addition to the denial of the receipt, there must be "some proof that the regular office practice was not followed or was carelessly executed so that the presumption that notice was mailed becomes unreasonable" and proof of performance will suffice no matter what "the receiver heard, saw or read." *Meckel*, 758 F.2d at 817 (citing *Nassau Ins. Co. v. Murray*, 386 N.E.2d 1085 (N.Y. 1978)).

Here, Clinton County had properly addressed and sent by certified mail the notice to the permanent address listed on the tax rolls that had been provided by Luessenhop. Duprey Aff. at ¶¶ 2, 3, 6 & 7. The notice was returned to the County with a notation of "unclaimed" and not as "undeliverable." The Clinton County Treasurer's Office proceeded to verify the address and confirmed it was correct. Janet Duprey, the Clinton County Treasurer, provided the Court with a detailed Affidavit stating the procedures followed in executing the notices of foreclosure; such procedures give rise to the presumption. Duprey Aff. at ¶¶ 3, 5 & 6. However, Luessenhop denies

---

[11] The notices were published in "two newspapers in Clinton County once a week for three non-consecutive weeks." Duprey Aff. at ¶ 5.

[12] N.Y. REAL PROP. TAX LAW § 1125(1)(a) carries "'a presumption of constitutionality, imposing a heavy burden on a party trying to overcome it.'" *Maple Tree Homes, Inc. v. County of Sullivan*, 2005 WL 975744, at *2 (N.Y. App. Div., 3d Dep't Apr. 28, 2005).

receipt of the notice. Compl. at ¶ 2. Since mere denial is insufficient to rebut the presumption, Luessenhop must have proof as to irregular office practices or careless execution by Clinton County, and yet those claims have not been made. *Meckel*, 758 F.2d. at 817; *see generally* Compl. Plaintiff does assert, however, that the County should have attempted to call her at her permanent address, if that failed then to call her in London, or if all else failed then to mail the notice to her in London or contact Kenneth McDonald, her official representative from previous appraisal hearings who was authorized to act for the Plaintiff regarding the properties in question. Compl. at ¶¶ 3 & 17; Dkt. 29, Luessenhop Aff. at ¶ 40. But as previously discussed, due process requires a reasonableness standard that "does not mean that all risk of non-receipt must be eliminated." *Weigner*, 852 F.2d at 649. Therefore, the notice sent by certified mail followed up by posting at the courthouse and publication in the newspaper is enough to conform to the due process standard.[13] Luessenhop has failed to rebut the presumption of proper notice. Additionally, Article 11 of the Real Property Tax Law comports with the due process, thus passing constitutional muster. Furthermore, Luessenhop did not need actual notice because the due process requirement for notice was fulfilled, therefore, the Court will not enjoin the Defendants to return the parcels to Plaintiff.

**2. "Unclaimed" versus "Undeliverable"**

Per New York law, unless a mailing is returned as "undeliverable," Clinton County is not required to call nor send notices to other addresses not listed on the tax roll. It is not a due process requirement. Plaintiff argues that the County Treasurer had to effectuate actual delivery of the notice because the certified mail came back unclaimed. If a county knows that a party does not

---

[13] The procedure conforms to N.Y. REAL PROP. TAX LAW § 1125(1)(a). Moreover, "[t]he failure of an intended recipient to receive any such notice shall not invalidate any tax or prevent the enforcement of the same as provided by law." N.Y. REAL PROP. TAX LAW § 1125(3)(b).

reside at the mailing address of record because the mail has been returned as "undeliverable" rather than "unclaimed," then it must use "due diligence" to find an alternate address. *Weigner*, 852 F.2d at 650 n.4; *see also Mullane*, 339 U.S. at 317; *Akey*, 375 F.3d at 236. However, the municipality would not be "required to undertake extraordinary efforts to discover the . . . whereabouts of a [property owner]." *Farbotko v. Clinton County*, 168 F. Supp. 2d 31, 41 (N.D.N.Y. 2001) (alterations in original) (noting that the county treasurer did not have to "search voting records, motor vehicle records, or the telephone book to obtain alternate mailing addresses"); *Mennonite*, 462 U.S. at 798 n.4. If the notice had come back as "undeliverable" and if the municipality knew "that the notice did not reach [] its destination, it is obligated to take steps . . . to effectuate delivery of the notice." *Farbotko*, 168 F. Supp. 2d at 40 (alterations in original) (internal quotation marks and citations omitted) (stating that the additional steps needed to be taken occurred after eighty-one notices were returned as "undeliverable"). Furthermore, the owners of land are "charged with the knowledge" that taxes are frequently due and therefore the county is entitled to rely on its records. *Girrbach v. Levine*, 522 N.Y.S.2d 276, 277-78 (N.Y. App. Div., 3d Dep't 1987). It is the owner's responsibility to ensure mailing addresses are current and accurate. *Id.*

If Luessenhop's notice had come back "undeliverable," the Clinton County Treasurer would have been obligated to check the public records, namely the tax rolls. *Farbotko,* 168 F. Supp. 2d. at 41 (noting that Duprey, the County Treasurer, had not checked the rolls and that some of the plaintiffs in the case had filed changes of addresses). If "undeliverable," the search of the public records should also include the tax rolls of other towns and villages within the county. *Akey*, 375 F.3d at 237 (stating that searching tax rolls of other towns and villages does not constitute extraordinary efforts because it would not be a search *beyond* the public record ); *cf. Akey*, 375 F.3d

at 237 (citing *Tobia v. Town of Rockland*, 484 N.Y.S.2d 226, 229 (N.Y. App. Div. 3d Dep't 1984) (cautioning "that local taxing authorities are [not] required to undertake extraordinary efforts to discover the current whereabouts of a property owner *whose actual address is not available through a search of the public records*") (emphasis added)). Here, even though the certified mail was returned as unclaimed, the address was checked against the tax roll records and it was determined that it was the correct address since previous notices had gone to the same address.

In a recent opinion, the New York State Court of Appeals stated that "notice in a tax foreclosure proceeding was sufficient where the county mailed notice to the address on the tax roll but did not search the public record after the notice was returned as 'not deliverable as addressed unable to forward.'" *Harner v. County of Tioga*, __ N.E.2d __, 2005 WL 1539708 (N.Y. June 30, 2005)[14] (quoting *Kennedy v. Mossafa*, 789 N.E.2d 607, 608 (N.Y. 2003)). The court further concluded that "'the attempted personal notice, coupled with posting and publication, satisfied due process.'" *Id.* (quoting *Kennedy*, 789 N.E.2d at 612) (holding that a failure to update the address and payment of bills delivered to the "challenged" address led the county to believe it had the correct contact information)). In *Harner*, the court found "an even stronger case" that the notice given comported with due process because the requirements of N.Y. REAL PROP. TAX LAW § 1125(1)(a) were further supplemented with a first class mailing of the notice. *Id.* The court noted that the U. S. Postal Service has defined "unclaimed" to mean that "the [a]ddresee abandoned or failed to call for [the] mail." *Id.* (alteration in original) (internal quotation marks and citation omitted). In *Harner*, the County of Tioga had sent notices by certified mail, first class mail, posting the notice at the courthouse, and publication. *Id.* Additionally, Harner had not challenged his

---

[14] This opinion is uncorrected and subject to revision before publication.

address[15] for eight years prior to the foreclosure proceeding and had, in fact, redeemed his property twice previously when notice had been delivered to *that* address.  *Id.* (emphasis added).  The Court of Appeals did not state that the County of Tioga was required to send the notice by first class mail in addition to the requirements of N.Y. REAL PROP. TAX LAW § 1125(1)(a), but rather they noted that the first class mailing made the case "even stronger" and that due process was satisfied.

Luessenhop did not change her address with either the County or Town.  She retained her permanent address in Washington, D.C.  Furthermore, when the certified mail was returned as "unclaimed," Duprey checked the address against the tax rolls.  Duprey Aff. at ¶¶ 6 & 7.  Luessenhop had also received four previous foreclosure notices at her Washington, D.C. address and had paid back taxes when those notices were received.  Defs.' Stat. of Undisputed Facts at ¶ 4 & 8.  Previous receipt of tax notices at her permanent address indicate the reliability of that address.  Clinton County sent the notices to the Plaintiff by certified mail and then posted as well as published the notices.  This satisfies the due process requirement.  Clinton County was not obligated to send the notices by first class mail after sending them by certified mail, although they could have which would make a case for the satisfaction of due process even stronger.  Since Clinton County satisfied the statute requirements and because Luessenhop had paid previous back taxes after receiving notice at her Washington, D.C. address, due process was fulfilled.

### 3.  Redemption and Surplus

Plaintiff asserts that she should have been able to pay the back taxes after the redemption

---

[15] In 1990, Harner had conveyed the Town of Spencer property to another couple.  *Harner*, 2005 WL 1539708.  In 1993, the tax rolls showed another address in the Town of Lansing as his mailing address.  *Id.*  However, in 1994, the tax rolls were amended placing the Town of Spencer property as Harner's mailing address.  *Id.*  Harner denied requesting that change.  *Id.*  In 1996 and 1998 when foreclosure proceedings were commenced, the notices were sent to Harner at the Town of Spencer address.  *Id.*  Although Harner denied knowledge of those proceedings, he nonetheless redeemed the property on both occasions.  *Id.*

period.  The notice had stated that the last date of redemption was January 17, 2003.  Dkt. No. 25, Stat. Pursuant to REAL PROP. TAX LAW § 1125; Dkt. No. 25, Combined Notice & Petition of Foreclosure Pursuant to REAL PROP. TAX LAW § 1123(2)(b) at p. 1.  Luessenhop called the County Treasurer after that date offering to pay the delinquent taxes and the County Treasurer refused.  Compl. at ¶ 29.  According to N.Y. REAL PROP. TAX LAW § 1110(1), "[r]eal property subject to a delinquent tax lien may be redeemed by payment to the enforcing officer, *on or before the expiration of the redemption period*, of the amount of the delinquent tax lien or liens, including all charges authorized by law."  (Emphasis added).  Here, Plaintiff attempted to redeem after the date had passed.  Furthermore, under N.Y. REAL PROP. TAX LAW § 1131, "[i]n the event of a failure to redeem or answer by any person having the right to redeem or answer, such person shall forever be barred and foreclosed of all right, title, and interest and equity of redemption in and to the parcel in which the person has an interest . . . ."  Once the redemption period had passed, the County Treasurer was under no obligation to accept late payment of the tax delinquency since Luessenhop was barred and foreclosed of the right to redeem after January 17, 2003.

Additionally, once a property has been foreclosed, "the County [is not] legally obligated to sell the properties back to the plaintiff[.]"  *Quick v. County of Broome*, 754 N.Y.S.2d 918 (N.Y. App. Div., 3d Dep't 2003) (citations omitted); *see generally Farbotko*, 168 F. Supp. 2d at 44-46; N.Y. REAL PROP. TAX LAW §§ 1110 & 1123.  The County Treasurer was not obligated to return the properties even if Plaintiff attempted to pay the back taxes in full after the redemption date.

Plaintiff also claims that the County's practice of keeping the surplus where the sale price is greater than the taxes due violates due process and equal protection by depriving her of her right to the surplus over the amount of delinquent taxes, interest, and penalties.  In support of this argument,

Plaintiff's cite to *Nelson v. City of New York*, 352 U.S. 103, 110 (1956), which states that the city did not violate the Fourteenth Amendment when they retained surplus money by selling private property for unpaid water bills. Dkt. 29, Pl.'s Mem. of Law at pp. 36-37. However, Plaintiff claims that the decision in that case was based upon specific facts. Luessenhop asserts that Clinton County is violating due process by keeping the proceeds from the tax sale. Notwithstanding, *Nelson* holds that the Federal Constitution does not prevent New York City "from foreclosing on real property and, in the absence of timely action to redeem or to recover any surplus, retaining the property or the entire proceeds of its sale 'where the record shows adequate steps were taken to notify the owners of the charges due and the foreclosure proceedings.'" *See Nelson*, 352 U.S. at 109; *Zachary et al v. Clinton County et al*, 1:01-CV-1281 (FJS/DRH), slip op. at 15-16 (N.D.N.Y. Jan. 10, 2003) (Scullin, Chief D.J.) (quoting *Nelson*).

Here, Plaintiff was the highest bidder for the properties at the auction but could not pay the mandatory deposit required to purchase the properties back. Defs.' Stat. of Undisputed Facts at ¶ 17. However, in light of *Nelson,* the County's retention of the surplus does not violate due process or equal protection.[16]

**4. Default Judgment**

Here, Plaintiff contends that she was never served with the Notice of Entry of the Default Judgment. Compl at ¶ 47. Plaintiff also claims that on this basis her due process rights were violated and that she should be able to pay the back taxes and have the properties returned. *Id.* at ¶ 51 & p. 8 ¶ (C). Under N.Y. REAL PROP. TAX LAW § 1131, "a motion to reopen a default in

---

[16] Furthermore, Plaintiff's assertion may be premature since the auction is on hold till the conclusion of this action.

redeeming or answering 'may not be brought later than one month after entry of the judgment.'"[17] *In re Foreclosure of Tax Liens by Clinton County*, 750 N.Y.S.2d 350, 351 (N.Y. App. Div., 3d Dep't 2002) (quoting § 1131). Furthermore, N.Y. REAL PROP. TAX LAW § 1131 "measures the time for a motion to reopen a default judgment not from the date of service, but from the date of entry of the default judgment of foreclosure . . . ." *Id.* Additionally, "barring a timely application and subsequent order vacating the default judgment of foreclosure, a tender of the past due taxes following entry of the judgment of foreclosure [is] untimely." *In re Foreclosure of Tax Liens by Clinton County*, 751 N.Y.S.2d 81, 82 (N.Y. App. Div., 3d Dep't 2002). Here, the order for the default judgment was signed on March 20, 2003, and entered on April 1, 2003. Dkt. No. 25, Order and Judgment No. 1 Pursuant to REAL PROP. TAX LAW § 1136. On June 12, 2003, Luessenhop appealed the default judgment. Defs.' Stat. of Undisputed Facts at ¶ 19. Then on June 17, 2003, Luessenhop moved to set aside the default judgment in the Clinton County Court and the motion was denied on August 1, 2003. *Id.* at ¶ 18. Luessenhop had thirty (30) days from the date of entry of the default judgment in which to make a motion to vacate the default judgment. Since the application to vacate was untimely, tender of her past due taxes is also untimely and her property does not have to be returned to her.

Plaintiff also claims that failure to be served with the Notice of Entry of the Default Judgment violated due process. "However, due process only requires notice of the pendency of the action and an opportunity to respond." *Weigner*, 852 F.2d at 652 (internal quotation marks and citations omitted). Notice of the pendency of the tax foreclosure proceedings provides the owners

---

[17] "[T]he one month period to vacate default judgments specifically provided for in section 1131 supercede[s] the one year period set forth in N.Y.C.P.L.R. 5015." *Farbotko*, 168 F. Supp. 2d at 39.

with an apprisal of their rights, therefore, there would be no due process requirement for the entity "to send additional notices as each step in the foreclosure proceedings [are] completed," such as the Notice of Entry of the Default Judgment. *Id.*; *see also Farbotko*, 168 F. Supp. 2d at 39.

### C. Damages

Additionally, Plaintiff seeks reasonable costs and attorney's fees pursuant to 42 U.S.C. § 1988 for violations of 42 U.S.C. § 1983 along with punitive damages against the Defendants William Bingel and Janet Duprey in their individual capacities. Under 42 U.S.C. § 1988, a court *may* award attorney's fees to a "prevailing party" in a § 1983 action. However, a plaintiff is a prevailing party if he or she "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Dillenbeck v. Hayes*, 830 F. Supp. 673, 674 (N.D.N.Y. 1993) (citations omitted). Here, Plaintiff could not prove a due process violation, therefore, Plaintiff could not be a prevailing party and reasonable costs and attorney's fees are **denied**.

Additionally, Plaintiff seeks punitive damages against Bingel[18] and Duprey. Punitive damages will be awarded when "the defendant's violation of federal law was intentional, . . . or when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others[.]" *McCardle v. Haddad*, 131 F.3d 43, 52-53 (2d Cir. 1997) (internal quotation marks and citations omitted). The record does not reflect that type of behavior. To reiterate, since Plaintiff is not a prevailing party and her cause of action is being dismissed, no form of damages would be appropriate.

---

[18] "Plaintiff agrees that Defendant Bingel is not personally liable for punitive damages and will stipulate to his dismissal in his individual capacity." Pl.'s Mem. of Law at p. 15, n.6.

### III.  CONCLUSION

For the reasons stated therein, it is hereby

**ORDERED**, that the Defendants' Motion for Summary Judgment (Dkt. No. 25) is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 29) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court enter a Judgment on behalf of the Defendants..

SO ORDERED.

Date:  July 20, 2005
        Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge