**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

ELIZABETH LUESSENHOP,

                                        Plaintiff,

            - v -                                                    Civ. No. 1:04-CV-263
                                                                         (RFT)

CLINTON COUNTY, NEW YORK,
WILLIAM BINGEL, in his Individual Capacity
and in his Official Capacity as Clinton
County Administrator,[1] and JANET DUPREY,
in her Individual Capacity and in her Official
Capacity as Clinton County Treasurer,

                                        Defendants.

**APPEARANCES:**                                          **OF COUNSEL:**

OFFICE OF MARK A. SCHNEIDER                   MARK A. SCHNEIDER, ESQ.
Attorney for Plaintiff
57 Court Street
Plattsburgh, NY 12901

MAYNARD, O'CONNOR, SMITH &                    ROBERT A. RAUSCH, ESQ.
CATALINOTTO
Attorney for Defendants
6 Tower Place
Albany, NY 12203

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**MEMORANDUM DECISION and ORDER**[2]

        Plaintiff, Elizabeth Luessenhop, brings a cause of action against Defendants, pursuant to 42

U.S.C. § 1983, alleging violations of Plaintiff's Fourteenth Amendment due process rights in a tax

_____

        [1] Plaintiff stipulates that Defendant Bingel is ***not*** liable in his individual capacity.  *See* Dkt. No. 50, Pl.'s Mem. of Law at p. 2, n.1; *see also Luessenhop v. Clinton County*, 378 F. Supp. 2d 63, 74 n.18 (N.D.N.Y. 2005).

        [2] Pursuant to 28 U.S.C. § 636(c), FED. R. CIV. P. 73, and N.D.N.Y.L.R. 72.2(b), the parties consented to disposition of this matter by the undersigned.  Dkt. No. 22.

foreclosure proceeding.  Dkt. 1, Compl. at ¶ 51.  Defendants bring a Motion to Dismiss pursuant to

FED. R. CIV. P. 12(b)(6), or in the alternative, Summary Judgment pursuant to FED. R. CIV. P. 56(b)

regarding the sole issue of whether, in light of the Second Circuit's Mandate, Defendants are

entitled to qualified immunity.  Dkt. No. 48.  Plaintiff opposes the Motion.  Dkt. No. 50.  For the

reasons to follow, the Motion for Summary Judgment is **granted in part and denied in part**.[3]

## I.  BACKGROUND

### A.  Procedural History

A brief recitation of the procedural history in the case is warranted.  On January 5, 2005,

Defendants filed their first Motion for Summary Judgment.  Dkt. No. 25.  In response to that

Motion, Plaintiff filed a Cross-Motion for Partial Summary Judgment.  Dkt. No. 29.  On July 20,

2005, this Court issued a Memorandum-Decision and Order granting Defendants' Motion and

denying Plaintiff's Cross-Motion.  Dkt. No. 37.  Thereafter, on July 21, 2005, Plaintiff filed a

Notice of Appeal to the United States Court of Appeals for the Second Circuit.  Dkt. No. 39.  On

November 2, 2006, the Second Circuit issued a Mandate reversing the judgment of this Court and

remanding the case for further proceedings.  Dkt. No. 43.[4]

---

[3] Plaintiff and Defendants submit Exhibits that are outside the pleadings.  Therefore, as the Court will consider matters outside the pleadings, the Motion will be treated as one for Summary Judgment.  *See infra* Part II.A.  We note that no prejudice befalls Plaintiff as she has submitted matters outside the pleadings in support of her Opposition, even though Plaintiff merely incorporates her supporting Exhibits from the previously filed Motion for Summary Judgment.  *See* Dkt. No. 50; *see also infra* Part I.A.

[4] The Mandate was issued on November 2, 2006, but filed with the Court on November 8, 2006.  Dkt. No. 43; *see also infra* Part II.B (discussing the Second Circuit's Mandate).

## B. Facts[5]

Plaintiff owned two adjacent parcels of land located in the Town of Champlain, Clinton County.  Dkt. No. 48, Defs.' 7.1 Statement at ¶ 3; Dkt. No. 50, Pl.'s 7.1 Statement at ¶ 3.  She resided in Washington, D.C., did not own any other property in Clinton County apart from the two parcels, and had not resided in the County for over twenty years.  Defs.' 7.1 Statement at ¶ 4; Dkt. No. 48, Robert A. Rausch, Esq., Aff., dated Feb. 21, 2007, Ex. B, Pl.'s Dep., dated Oct. 13, 2004, at p. 25, lines 14-25; Pl.'s 7.1 Statement at ¶ 4.

Prior to the foreclosure action in 2002-2003, Plaintiff had been the subject of previous foreclosure actions.  Defs.' 7.1 Statement at ¶ 5.  In these earlier actions, Plaintiff paid off portions of the back taxes owed upon the receipt of the final redemption notices in order to take her property out of foreclosure.  *Id.*[6]  During the year preceding the 2002-2003 foreclosure action, several letters and warnings were sent to Plaintiff advising her that back taxes were due and a foreclosure action would commence if not paid.  Defs.' 7.1 Statement at ¶ 6.  These letters were mailed to her address in Washington, D.C., yet were not returned; Plaintiff did not respond to the letters or pay the back taxes.  Defs.' 7.1 Statement at ¶ 6.

---

[5] Plaintiff's response to the Motion for Summary Judgment fails to comport with the requirements of the Local Rules for the Northern District of New York.  *See* N.D.N.Y.L.R. 7.1(a).  Despite the fact that Plaintiff submitted a 7.1 Statement as required, she does not "mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs."  N.D.N.Y.L.R. 7.1(a)(3).  Several times Plaintiff merely states she is unable to admit or deny a statement.  *See* Dkt. No. 50, Pl.'s 7.1 Statement at ¶¶ 5 & 6.  Furthermore, when the opposing party denies a paragraph, the "denial shall set forth a specific citation to the record where the factual issue arises."  N.D.N.Y.L.R. 7.1(a)(3).  On several occasions where Plaintiff denies a statement, there is no citation to the record.  *See* Pl.'s 7.1 Statement at ¶¶ 3, 5, 9, 11, 12, 19, & 25.  Therefore, those paragraphs that do not comply with the Local Rules are deemed admitted.  To the extent necessary, the Court will, nevertheless, utilize the accompanying Exhibits to adduce the uncontested, material facts of the case.

[6] Although Plaintiff states there is no evidence to support the allegations that she was subjected to prior foreclosures and was late in paying her taxes, this assertion is specifically controverted by her own Affidavit.  *See* Dkt. No. 29, Elizabeth Luessenhop Aff., dated Jan. 13, 2005, at ¶¶ 4 & 5.

In regards to the current action, on October 4, 2002, Clinton County mailed Notices and Petitions of Foreclosure to those who had still not paid taxes on their properties, including Plaintiff. Defs.' 7.1 Statement at ¶ 7; Rausch Aff., Ex. C, Foreclosure Notice, dated Oct. 4, 2002; Pl.'s 7.1 Statement at ¶ 7.  The Notice stated the final date of redemption was January 17, 2003, and if a property owner did not timely redeem, the property of said owner could be foreclosed.  Defs.' 7.1 Statement at ¶ 7; Rausch Aff., Ex. C, Foreclosure Notice, dated Oct. 4, 2002; Pl.'s 7.1 Statement at ¶ 7.  This Notice was sent to Plaintiff by certified mail to her Washington, D.C. address, the address listed on the tax rolls kept by the Town of Champlain.  Defs.' 7.1 Statement at ¶ 8; Rausch Aff., Ex. B, Pl.'s Dep. at p. 7, lines 18-20, p. 8, lines 4-6, & p. 13, lines 10-15; Pl.'s 7.1 Statement at ¶ 8.  Plaintiff had received prior tax bills and foreclosure notices at that address.  Defs.' 7.1 Statement at ¶ 8; Rausch Aff., Ex. B, Pl.'s Dep. at p. 15, lines 12-22; Pl.'s 7.1 Statement at ¶ 8.

In regards to the 2002 Notice, the United States Post Office attempted, on two occasions, to deliver, via certified mail, Notice to the Washington, D.C., address, but such were returned to the Clinton County Treasurers' Office as "unclaimed."  Defs.' 7.1 Statement at ¶ 9; Rausch Aff., Ex. D, Certified Letter Envelope; Pl.'s 7.1 Statement at ¶ 9.  During the time the Post Office made these attempts, Plaintiff was temporarily living in London, England, at an address which was not known to the County.  Defs.' 7.1 Statement at ¶ 10; Rausch Aff., Ex. B, Pl.'s Dep. at p. 8, lines 7-16, p. 15, lines 2-22, p. 22, line 25, & p. 23, lines 1-3 & 8-11; Pl.'s 7.1 Statement at ¶ 10.  After the certified mail was returned, an employee of the Clinton County Treasurer's Office compared the address on the envelope to the address listed on the tax rolls and found the address to be correct.[7]  Defs.' 7.1

---

[7] *See also Luessenhop v. Clinton County*, 378 F. Supp. 2d 63, 66 (N.D.N.Y. 2005) (noting that the address was confirmed when compared to the tax rolls).

Statement at ¶ 11; Rausch Aff., Ex. E, Janet L. Duprey Dep., dated Oct. 13, 2004, at p. 28, lines 13-25 & p. 29, lines 1-9.

Plaintiff did not contact the County prior to the January 17, 2003 redemption date to inquire of the status of the back taxes owed and the forthcoming foreclosure action. Defs.' 7.1 Statement at ¶ 13; Pl.'s 7.1 Statement at ¶ 13. Because Plaintiff did not pay her taxes by the redemption date, an order of default judgment was signed on March 20, 2003, thereby transferring title of the parcels to Clinton County. Defs.' 7.1 Statement at ¶ 13; Rausch Aff., Ex. G, Order and Judgment, dated Mar. 20, 2003; Pl.'s 7.1 Statement at ¶ 13. Subsequently, on or about May 16, 2003, Plaintiff contacted the County in order to pay the outstanding taxes. Defs.' 7.1 Statement at ¶ 14; Pl.'s 7.1 Statement at ¶ 14. Plaintiff was told the redemption deadline passed, the judgment was signed, title to the parcels passed to the County, and she could appear at the foreclosure auction to bid on the property. Defs.' 7.1 Statement at ¶ 14; Pl.'s 7.1 Statement at ¶ 14. Plaintiff then appealed the judgment to the New York State Supreme Court, Appellate Division, Third Department. Defs.' 7.1 Statement at ¶ 15; Pl.'s 7.1 Statement at ¶ 15. The County moved to dismiss the appeal, which was granted in August 2003. Defs.' 7.1 Statement at ¶ 15; Pl.'s 7.1 Statement at ¶ 15. After the decision was rendered, Plaintiff moved to appeal to the New York State Court of Appeals and such motion was denied in October 2003. Defs.' 7.1 Statement at ¶ 15; Pl.'s 7.1 Statement at ¶ 15. Then on June 17, 2003, Plaintiff moved by order to show cause in County Court to set aside the default judgment, which was denied. Defs.' 7.1 Statement at ¶ 16; Pl.'s 7.1 Statement at ¶ 16.

On June 25, 2003, a public tax auction was held and Plaintiff outbid all other bidders for her property. Defs.' 7.1 Statement at ¶ 17; Pl.'s 7.1 Statement at ¶ 17. However, she was unable to pay the mandatory deposit needed for the purchase. Defs.' 7.1 Statement at ¶ 17; Pl.'s 7.1 Statement at

¶ 17.  Thereafter, Plaintiff filed the current lawsuit.  Defs.' 7.1 Statement at ¶ 18; Pl.'s 7.1 Statement

at ¶ 18.  During the pendency of this action, the County agreed to hold the property and remove it

from future auctions.  Defs.' 7.1 Statement at ¶ 19; Pl.'s 7.1 Statement at ¶ 19.  The County further

provided Plaintiff with a key to the property and she has stored her personal belongings on the

premises.  Defs.' 7.1 Statement at ¶ 19; Pl.'s 7.1 Statement at ¶ 19.  Plaintiff has entered the

property on occasion and has hired contractors to maintain the parcels.  Defs.' 7.1 Statement at ¶ 19;

Pl.'s 7.1 Statement at ¶ 19.

## II.  DISCUSSION

### A.  Standard of Review

As previously noted, because the Court will consider matters outside the pleadings, the

Motion will be treated as one for Summary Judgment.  *See* FED. R. CIV. P. 12(b) (noting that if

matters outside the pleading are submitted and not excluded by the court, the motion shall be treated

as one for summary judgment pursuant to Rule 56); *see also supra* note 3.  Pursuant to FED. R. CIV.

P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material

fact and . . . the moving party is entitled to judgment as a matter of law."  The moving party bears

the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and

admissions on file, together with affidavits, if any," that there is no genuine issue of material fact.

*F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317,

323 (1986)).  "When a party has moved for summary judgment on the basis of asserted facts

supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local

court rules, served a concise statement of the material facts as to which it contends there exist no

genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the

nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the nonmoving party must "set forth specific

facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials"

of the facts submitted by the moving party. FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344

F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to

defeat a motion for summary judgment when the moving party has set out a documentary case.");

*Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn

statements are "more than mere conclusory allegations subject to disregard . . . they are specific and

detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in

deciding a summary judgment motion" and the credibility of such statements is better left to a trier

of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir.

1995) and *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

When considering a motion for summary judgment, the court must resolve all ambiguities

and draw all reasonable inferences in favor of the nonmoving party. *Nora Beverages, Inc. v. Perrier*

*Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary

judgment motion stage of the litigation is carefully limited to discerning whether there are any

genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this

point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential*

*Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

### B.  Second Circuit Mandate

By reversing and remanding, the Second Circuit cited to a United States Supreme Court

case, *Jones v. Flowers*, 547 U.S. 220, 126 S. Ct. 1708 (2006), which was decided subsequent to this

Court's decision.  *See Luessenhop v. Clinton County*, 466 F.3d 259, 268 (2d Cir. 2006).  In *Jones v. Flowers*, Jones, the taxpayer, failed to pay his property taxes for three consecutive years and in the fourth year, the Arkansas Commissioner of State Lands sent Jones a certified letter notifying him of the delinquency, but the letter was returned "unclaimed."  *Jones v. Flowers*, 126 S. Ct. at 1712.  Two years later, the Commissioner published in the local newspaper a notice of public sale.  *Id.*  Several months after the publication, a third-party submitted an offer to buy Jones' property and, because of this event, the Commissioner sent another certified letter to him informing him of the offer, which was also returned as "unclaimed."  *Id.*  The third-party purchased Jones' property and an unlawful detainer notice was delivered and served upon Jones' daughter, who then notified Jones that his house was acquired in a tax sale.  *Id.* at 1713.  Jones subsequently filed suit alleging a violation of his due process rights under the Fourteenth Amendment.  *Id.*

Although the Supreme Court stated that due process does not require actual notice before the government takes an owner's property, the government must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Id.* at 1713-14 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) & citing *Dusenbery v. United States*, 534 U.S. 161, 170 (2002)).  However, the Court stated the issue of "whether due process entails further responsibility when the government becomes aware prior to the taking that its attempt at notice has failed[]" had not yet been addressed.  *Id.* at 1714 (commenting that "th[is] is a new wrinkle").  The Court sought to reconcile the interest of the state against the individual's interest in evaluating the adequacy of notice in that the ultimate goal was to employ such means by which the individual may actually be informed.  *Id.* at 1715 (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. at

314 & 315).

The Supreme Court ultimately found that the Arkansas Commissioner could have taken other reasonable steps to actually inform Jones of the delinquency before taking his property. *Id.* at 1718.[8]  One of those reasonable steps would be to send the notice via regular mail, which would not require a signature as does certified mail. *Id.* at 1718-19.  The Court found this method could increase the chances of actual notice.[9]  *Id.* at 1719.  Other follow-up measures suggested would be to post a notice on the front door of the property or to address undeliverable mail to "occupant" rather than the individual's name. *Id.*  However, the Court noted that the government is not required to search for a person's new address or other government records such as tax rolls because it would impose a significant burden upon the government.[10]  *Id.*  The Court further stated that notice by publication may be constitutionally adequate only where "it is not reasonably possible or practicable to give more adequate warning[.]" *Id.* at 1720 (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. at 315 & 317).  The Court concluded by stating that it was not "prescrib[ing] the form of service that the [government] should adopt[]" and that it was leaving the determination as to how to provide adequate notice with the particular state. *Id.* at 1721 (quoting *Greene v. Lindsey*, 456 U.S. 444, 445 n.2 (1982)).

---

[8] The Supreme Court stated that "if there were no reasonable additional steps the government could have taken upon return of the unclaimed notice letter, it [could not] be faulted for doing nothing." *Jones v. Flowers*, 126 S. Ct. at 1718.

[9] The dissent, however, astutely observed that the use of regular mail is no more of a reasonably calculated method to achieve notice and may be less effective than certified mail because certified mail is "tracked, delivery attempts are recorded, actual delivery is logged, and notices are posted to alert someone at the residence that certified mail is being held at a local post office." *Jones v. Flowers*, 126 S. Ct. at 1725-26.  The dissent further commented that as a contrast, regular mail is untraceable and there is no record of delivery or receipt. *Id.* at 1726.

[10] The dissent acknowledged that the Supreme Court did not impose any other burdens upon the government such as "searching state tax records, the phone-book, the Internet, department of motor vehicle records, or voting rolls, contacting his employer, or employing debt collectors." *Jones v. Flowers*, 126 S. Ct. at 1726, n.6.

Based on the Supreme Court's decision, the Second Circuit found the facts of this case to be similar to that in *Jones* since in both cases notice was sent by certified mail and returned as "unclaimed," notice was posted in the newspaper, and no further action was taken. *Luessenhop v. Clinton County*, 466 F.3d at 270. The Second Circuit did note that even though Clinton County had posted notice at the local courthouse, it did not distinguish itself from *Jones* because only "chance" would bring a person to appear at the courthouse to be apprised of the government's intentions. *Id.* at 270, n.6. Thus, the Court held that Clinton County could have taken at least one of the additional steps suggested by the Supreme Court, namely sending a letter by first-class mail to Plaintiff's Washington, D.C., address. *Id.* at 270. Clinton County's efforts to provide notice were found to be insufficient to satisfy the due process requirements. *Id.*

## C. Qualified Immunity

Defendants state they are entitled to qualified immunity because they complied with the law as it existed at the time of the foreclosure action. Dkt. No. 48, Defs.' Mem. of Law at pp. 5-11.

Qualified immunity shields "government officials from liability for civil damages when their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *African Trade & Info. Ctr., Inc. v. Abromaitis*, 294 F.3d 355, 359 (2d Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Mollica v. Volker*, 229 F.3d 366, 370 (2d Cir. 2000). This also applies "insofar as it was objectively reasonable for [the government officials] to believe that their acts did not violate those rights." *Mollica v. Volker*, 229 F.3d at 370 (internal quotation marks and citations omitted); *see also Anderson v. Creighton*, 483 U.S. 635, 641 (1987). The objectively reasonable test will be met "'if [officials] of reasonable competence could disagree' on the legality of the defendant's actions." *Lennon v. Miller*, 66 F.3d

*-10-*

416, 420 (2d Cir. 1995) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (further citation

omitted)). Public officials will further be entitled to qualified immunity if, "at the time the [official]

was acting, the right in question was not clearly established[.]" *Pitsley v. Ricks*, 2000 WL 362023,

at *1 n.1 (N.D.N.Y. Mar. 31, 2000) (citing *Connell v. Signoracci*, 153 F.3d 74, 80 (2d Cir. 1988)).

In order for the constitutional right to be clearly established, three elements must be met: "1)

. . . [that] the right in question [be] defined with reasonable specificity; 2) [that] the decisional law

of the Supreme Court and applicable circuit court support the existence of the right in question; and

3) [that] under preexisting law a reasonable defendant official would have understood that his or her

acts were unlawful." *Mollica v. Volker*, 229 F.3d at 371 (internal quotation marks and citations

omitted) (alterations in original); *see also Moore v. Vega*, 371 F.3d 110, 114 (2d Cir. 2004) (stating

that in assessing whether defendants are entitled to qualified immunity, the Court must examine

"[o]nly Supreme Court and Second Circuit precedent *existing at the time of the alleged violation*" to

determine if a right is clearly established (citation omitted)).

> Summary judgment will be granted based upon qualified immunity if no reasonable jury,
> looking at the evidence in the light most favorable to, and drawing all inferences most
> favorable to, the plaintiffs, could conclude that it was objectively unreasonable for the
> defendant[] to believe that he was acting in a fashion that did not clearly violate an
> established federally protected right.

*Lennon v. Miller*, 66 F.3d at 420 (internal quotation marks and citations omitted) (alteration in
original).

In other words, "if the court determines that the only conclusion a rational jury could reach is that

reasonable [officials] would disagree about the legality of the defendants' conduct under the

circumstances, summary judgment for the [officials] is appropriate." *Id.* at 421. Additionally, if the

"factual record is not in serious dispute . . . . the ultimate legal determination whether . . . a

reasonable [official] should have known he acted unlawfully is a question of law better left for the

court to decide." *Id.* (citations omitted).

Here, the alleged violation took place in late 2002 into 2003 when the notices were sent and the foreclosure took place. *See supra* Part I.B. In 2002, N.Y. REAL PROP. TAX LAW § 1125(1)(a) stated:

> The enforcing officer shall on or before the date of the first publication of the notice above set forth cause a notice to be mailed to (a) each owner by certified mail and any other person by ordinary first class mail whose right, title, or interest was a matter of public record as of the date the list of delinquent taxes was filed, which right, title or interest will be affected by the termination of the redemption period, and whose name and address are reasonably ascertainable from the public record, including the records in the offices of the surrogate of the county[.]

The law remained unchanged in 2003. *See* N.Y. REAL PROP. TAX LAW § 1125 (2003). The statute further stated in 2002 and 2003 that "[t]he failure of an intended recipient to receive any such notice shall not invalidate any tax or prevent the enforcement of the same as provided by law." *Id.* at § 1125(3)(b) (2002 & 2003). In addition, in 2002 and 2003, New York statutory law stated "[u]pon the filing of a petition of foreclosure . . ., the enforcing officer forthwith shall cause a notice of foreclosure to be published in each of three non-consecutive weeks in a two month period in at least two newspapers designated by him or her." *Id.* at § 1124 (2002 & 2003). Defendants, and in particular, Duprey, relied unwittingly upon this black letter, statutory law.

As previously noted, it has been clearly established by the Supreme Court that due process does not require actual notice before taking an owner's property. *Dusenbery v. United States*, 534 U.S. at 170. The government must, however, provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. at 314. However, in 2006, the Supreme Court specifically granted *certiorari* because there wass "a

*-12-*

conflict among the Circuits and State Supreme Courts concerning whether the Due Process Clause requires the government to take additional reasonable steps to notify a property owner when notice of a tax sale is returned undelivered." *Jones v. Flowers*, 126 S. Ct. at 1713.

In noting this conflict, the Supreme Court cited to a Second Circuit case as well as a New York State Court of Appeals case. *See id.* (citing *Akey v. Clinton County,* 375 F.3d 231, 236 (2d Cir. 2004) & *Kennedy v. Mossafa,* 789 N.E.2d 607, 611 (N.Y. Ct. of App. 2003)).  Notwithstanding, these two cases do not have a precedential bearing on the issue at hand.  As to the Second Circuit case, *Akey v. Clinton County*, the decision was rendered in July 2004, thus, its precedential effect did not exist at the time of the alleged violation in 2002-2003 and could not have created a clearly established constitutional right for that time period.  *See id.* (citing *Akey* for the proposition that "[i]n light of the notice's return, the County was required to use 'reasonably diligent efforts' to ascertain Akey's correct address"); *see also Moore v. Vega*, 371 F.3d at 114.  As for the New York State Court of Appeals case, *Kennedy v. Mossafa*, it too would not have any precedential effect because it is neither a Supreme Court nor Second Circuit case.  Nevertheless, even if it were, it would not have provided a clearly established statutory or constitutional right.  First, the provisions of N.Y. REAL PROP. TAX LAW § 1125 existing at the time of the alleged violation in 1998 in that case stated that the property owner was to be notified by ordinary mail.  *Kennedy v. Mossafa,* 789 N.E.2d at 610, n.2 (noting that the section was amended in 2000 to state that notice to an owner was to be sent by certified mail).  Second, though the *Mossafa* court stated it "reject[ed] the view that the enforcing officer's obligation is always satisfied by sending the notice to the address listed in the tax roll, even where the notice is returned as undeliverable[,]" the court went on to state that the enforcing officer did not have to do a further search because there was no evidence that a search of

*-13-*

the public record would have revealed another address. *Id.* at 611-12 (noting, in addition, that a reasonable search did not include "searching the Internet, voting records, motor vehicle records, the telephone book or other similar sources); *see also Jones v. Flowers*, 126 S. Ct. at 1713.

More importantly, however, the Supreme Court, noting that this question has been addressed by several Courts of Appeals and State Supreme Courts, stated that it has "*never addressed* whether due process entails *further responsibility* when the government becomes aware prior to the taking that its attempt at notice has failed." *Jones v. Flowers*, 126 S. Ct. at 1714 (emphasis added). The only case cited by the Supreme Court for the Second Circuit in regard to this issue is *Akey v. Clinton County*, which we have already determined to have no precedential effect for the time period of the alleged violation in this case. *See supra* p. 13.

The Supreme Court has clearly established certain rights in regards to notice under the Fourteenth Amendment Due Process Clause. For example, the Supreme Court has previously held that sending notice to an owner's home when the government was aware the person was in jail is constitutionally inadequate and that notice of foreclosure by mailing, posting, and publication is equally inadequate when the government knows the property owner is incompetent. *Id.* at 1716 (citing *Robinson v. Hanrahan*, 409 U.S. 38, 40 (1972) & *Covey v. Town of Somers*, 351 U.S. 141 (1956)). In addition, the Court in *Jones* cites to a prior Supreme Court case, *Mullane*, wherein it was stated that notice by publication is only adequate in circumstances where "it is not reasonably possible or practicable to give more adequate warning[.]" *Id.* at 1720 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. at 317). It must be noted that in *Mullane* the only method of notice utilized was by publication. *See generally Mullane v. Cent. Hanover Bank & Trust Co.*, 339

U.S. 306.[11]

In asserting that Defendants knew that there was a clearly established right, in addition to

cases cited above by this Court, Plaintiff relies on two other cases, *Ciocca v. Clinton County,* 1999

U.S. Dist. Lexis 22401 (N.D.N.Y. Dec. 20, 1999) and *Farbotko v. Clinton County*, 2003 WL

21303256 (N.D.N.Y. 2003).  Neither case affirms Plaintiff's argument.  In *Ciocca v. Clinton

County*, the plaintiff was granted a preliminary injunction because the government was aware *prior*

to the mailing of the notice that the plaintiff did not reside at the mailing address where notice was

sent.  *See* 1999 U.S. Dist. Lexis 22401, at *8-9.[12]  The factual circumstances between that case and

the present one are clearly distinguishable and the holding in that case does not create a clearly

established right that if notice is sent to the *correct* address and the certified mailing is returned as

unclaimed that additional steps must be taken.

Plaintiff's citation to *Farbotko v. Clinton County* is truly perplexing.[13]  Having similar

circumstances to the case at hand, notice to two landowners was returned to the defendants

undelivered, the notice was supplemented with notice by publication and posting, and when the

mailed notice was returned undelivered, defendants searched the tax rolls of the town where the

property was located but found no alternate address.  *See generally Farbotko v. Clinton County*,

2003 WL 21303256.  In early 2003, the jury found this satisfied the due process requirements.  *Id.*

---

[11] Interestingly enough, the dissent in *Jones*, citing to *Mullane*, stated that the majority seemingly found the Arkansas Commissioner's attempt at notice by publication inadequate as if it were the Commissioner's only method of effectuating service, and not as the secondary method.  *Jones v. Flowers*, 126 S. Ct. at 1723, n.2.

[12] The Court further notes that in accordance with the statue at the time of the *Ciocca* case, notices were to be mailed by first class mail and not certified mail.  *Compare Ciocca v. Clinton County,* 1999 U.S. Dist. Lexis 22401 (N.D.N.Y. Dec. 20, 1999) *with* N.Y. REAL PROP. TAX LAW § 1125 (1999).

[13] First, this case has no precedential value since it is neither a Supreme Court nor Second Circuit case, and moreover it was decided after the events in our case.  Furthermore, this case was reversed and we are wondering what precedential value a reversed case could lend.

However, this finding of the case concerning the two landowners was reversed in 2004 in the case of *Akey v. Clinton County*, 375 F.3d 231, which occurred some time after the alleged violation in this case.[14]

Here, certain facts are axiomatic.  The only address on record for Plaintiff in Clinton County during the relevant time period was her Washington, D.C., address as stated by Plaintiff herself. The County sent Plaintiff the Notice and Petition of Foreclosure by certified mail to the Washington, D.C., address in October 2002, pursuant to the statute, for which delivery was attempted on at least two occasions, and the mailing was ultimately returned as "unclaimed."  In addition to the certified mailing, Clinton County also published the notice of foreclosure in two Clinton County newspapers once a week over three different weeks and notice was posted at the Clinton County Courthouse.  *See Luessenhop v. Clinton County*, 466 F.3d 259, 270 (2d Cir. 2006); *see also Luessenhop v. Clinton County*, 378 F. Supp. 2d 63, 69 (N.D.N.Y. 2005).  The redemption date came and went on January 17, 2003, and the County received title to the property on March 20, 2003.

Much like government officials in *Moore v. Vega*, there are at least two ways in which the governmental officials in this case are entitled to qualified immunity.  371 F.3d at 114.  While it is well-settled law from the Supreme Court and Second Circuit that the government must provide notice that is reasonably calculated, case law from these Courts dealt with problems occurring when the government did not have a property owner's correct address or the government knew before attempting to provide notice that it would be ineffectual.  The Supreme Court and Second Circuit did not address the issue in the current situation until well after the foreclosure action occurred in

---

[14] Again, this Court has already discussed the effect of the *Akey* case.  *See supra* p. 13.

this case. *See Jones v. Flowers*, 126 S. Ct. 1708 (2006) & *Akey v. Clinton County,* 375 F.3d 231, 236 (2d Cir. 2004). This is made abundantly clear from the Supreme Court's own assertion when it stated it has "never addressed whether due process entails further responsibility when the government becomes aware prior to the taking that its attempt at notice has failed." *Jones v. Flowers*, 126 S. Ct. at 1714. Because the Court must adhere to only Supreme Court and Second Circuit precedent existing at the time of the alleged violation to determine if a right is clearly established, the Court finds that at the time Defendants were acting in late 2002 and early 2003, the right to have the "unclaimed" certified mailing supplemented with a first class mailing, posting of the notice on the front door, or addressing undeliverable mail to an "occupant" rather than the individual's name was not clearly established. *See Moore v. Vega*, 371 F.3d at 114; *Pitsley v. Ricks*, 2000 WL 362023, at *1 n.1 (N.D.N.Y. Mar. 31, 2000).

Second, it is objectively reasonable for Defendants to believe that their actions were lawful at the time they posted notices in the newspaper and at the courthouse, which would satisfy Luessenhop's due process rights and that "their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Moore v. Vega*, 371 F.3d at 114-15 (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)) (further citation omitted); *Demoret v. Zegarelli*, 451 F.3d 140,148-49 (2d Cir. 2006) (citing *Moore v. Vega* for the legal proposition that "government officials will be immune from liability if they can establish that it was objectively reasonable for them to believe their actions were lawful at the time"). Or stated conversely, it was not objectively reasonable for Defendants to have known that their conduct violated any of Luessenhop's rights. *Pitsley v. Ricks*, 2000 WL 362023, at *1 n.1 (citing *Connell v. Signoracci*, 153 F.3d 74, 80 (2d Cir. 1988)).

*-17-*

Even looking at the evidence in the light most favorable to, and drawing all inferences in favor of, Luessenhop, no reasonable jury could conclude that it was objectively unreasonable for Defendants to believe that they were acting in a fashion that did not clearly violate an established federally protected right.

Therefore, the Motion for Summary Judgment is **granted** on the grounds of qualified immunity.

### D.  Punitive Damages

Both parties further raise the issue of punitive damages.  *See* Defs.' Mem. of Law at pp. 5-6; Pl.'s Mem. of Law at pp. 9-11.  In light of finding qualified immunity for Defendants Bingel and Duprey, this issue is moot.[15]  As the municipality, Clinton County, remains as a Defendant, the Court must address whether punitive damages may be levied against a municipality.

The Supreme Court has noted that punitive damages have long been awarded against individuals in § 1983 cases.  *City of Newport v. Fact Concerts, Inc.* 453 U.S. 247, 254 (1981).  In determining whether a municipality may be subject to punitive damages, the Supreme Court delved into the legislative history behind 42 U.S.C. § 1983.  *See id.* at 258-67; *see also Ciraolo v. City of New York*, 216 F.3d 236, 239-40 (2d Cir. 2000) (citing *City of Newport*).  "Punitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct."  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. at 266-67.  By this notion, the Court

---

[15] As noted previously, Plaintiff states "that Defendant Bingel is not personally liable for punitive damages and will stipulate to his dismissal in his individual capacity."  Pl.'s Mem. of Law at p. 9, n.4.  Furthermore, for what it is worth, the Court stands by its prior opinion in that the type of behavior required to award these types of damages, namely that the defendants' conduct be outrageous due to evil motive or reckless indifference to the rights of others, has not been exhibited in this case against Bingel and Duprey based on the factual circumstances.  *See Luessenhop v. Clinton County*, 378 F. Supp. 2d at 74; *see also Smith v. Wade*, 461 U.S. 30, 46-47 (1983).

stated that an award of punitive damages against a municipality tantamounts to punishing the

taxpayers who took no part in the alleged violation.  *Id.* at 267.  The Supreme Court went on to state

that

> punitive damages imposed on a municipality are in effect a windfall to a fully
> compensated plaintiff, and are likely accompanied by an increase in taxes or a reduction
> of public services for the citizens footing the bill.  Neither reason nor justice suggests
> that such retribution should be visited upon the shoulders of blameless or unknowing
> taxpayers.[16]

*Id.*; *see also Ciraolo v. City of New York*, 216 F.3d at 239-240 (quoting *City of Newport*).

Based upon a through analysis of legislative history, common law, and public policy, the Supreme

Court has held that "a municipality is immune from punitive damages under 42 U.S.C. § 1983."

*City of Newport v. Fact Concerts, Inc.*, 453 U.S. at 271; *Ciraolo v. City of New York*, 216 F.3d at

240; *see also Chen v. City of Syracuse*, 2007 WL 764639, at *6 (N.D.N.Y. Mar. 9, 2007) (stating

that punitive damages are not available against municipalities or defendants in their official

capacities (citing *Dorsett-Felicelli v. County of Clinton*, 2006 WL 2792746, at *2 (N.D.N.Y. Sept.

26, 2006))).

Accordingly, since Clinton County was sued as a party to this action pursuant to § 1983,

Clinton County is immune from punitive damages.

### E.  Back Taxes

Defendants ask this Court to rule as a matter of law that Luessenhop is responsible for

payment of certain disputed taxes together with such other and further relief as the Court deems just

and proper.  *See* Dkt. No. 48, Notice of Mot.  When this Court granted Defendants permission to file

---

[16] The Supreme Court noted, however, that there may be extreme situations where "the taxpayers are directly responsible for perpetrating an outrageous abuse of constitutional rights."  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. at 267, n.29.  The Court did not find such circumstances in that case and this Court as well does not find that such a circumstance exists based on our facts.

a Motion for Summary Judgment, we were, and it appears Luessenhop was as well, suffering under the notion that this was going to be a Motion for Partial Summary Judgment to address solely the issue of Defendants affirmative defense of qualified immunity.  Therefore, Luessenhop inadvertently failed to respond to Defendants' request.  Dkt. No. 55, Pl.'s Reply Lt.-Mot., dated Mar. 28, 2007.  Moreover, although Defendants have made this Motion, they have failed to provide the Court with the actual amount of the back taxes they claim is owed.  The exact amount of the delinquency would be necessary for us to decide this issue and should have been stated therein. Because Luessenhop unwittingly did not oppose this Motion and the Court feels that it has been inadequately presented, the Court will deny this part of the Motion but reserve Defendants' right to renew this application.

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**ORDERED**, that Defendants' Motion for Summary Judgment (Dkt. No. 48) is **GRANTED IN PART AND DENIED IN PART**, consistent with the decision above.  Defendants may renew their Motion for a determination whether Plaintiff owes back taxes on the property in question; and it is further

**ORDERED**, that Defendants Bingel and Duprey are **DISMISSED** from this action; and it is further

**ORDERED**, that the parties must advise the Court within seven (7) days of the filing of this Order whether they wish to engage in further settlement discussions with the Court prior to trial; and it is further

**ORDERED**, that this case shall be trial ready on or about May 21, 2007.  The Court shall

hold a pretrial conference to set the actual trial date.  The parties shall advise the Court of the dates

and times they are available for a telephone conference during the week ending May 11, 2007.

SO ORDERED.


Date:   April 6, 2007
        Albany, New York


_____
RANDOLPH F. TREECE
United States Magistrate Judge